IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| LISA WILSON,<br><br>        Plaintiff,<br><br>v.<br><br>UMPQUA INDIAN DEVELOPMENT<br>CORPORATION; SEVEN FEATHERS<br>CASINO AND HOTEL CORPORATION;<br>COW CREEK BAND OF UMPQUA INDIANS<br>TRIBAL COURT; TRIBAL COURT JUDGE<br>RONALD YOKIM, in his official capacity; and<br>DOES 1-10,<br><br>        Defendants. | Case No. 6:17-cv-00123-AA<br>OPINION AND ORDER |

AIKEN, Judge:

       Plaintiff Lisa Wilson asks this Court to reverse and remand an order of defendant Cow Creek Band of Umpqua Indians Tribal Court ("Tribal Court"). Plaintiff filed a personal injury suit against defendants Umpqua Indian Development Corporation and Seven Feathers Casino and Hotel Corporation (collectively, "the Tribe") in that court. Tribal Court Judge Ronald

Page 1 – OPINION AND ORDER

Yokim ("Judge Yokim"), another defendant in this action, granted the Tribe's motion for summary judgment on the ground that plaintiff had failed to comply with the procedural requirements of the Tribal Tort Claims Code. Defendants moved to dismiss for lack of subject matter jurisdiction, deficient service, and failure to state a claim. As explained in more detail below, defendants' motion is granted because this Court lacks subject matter jurisdiction over plaintiff's claims and because those claims are barred by sovereign immunity.

## BACKGROUND

On January 14, 2014, plaintiff was a guest at Seven Feathers Casino and Hotel when she allegedly tripped on an "old, filthy and unsecured" floor mat near a door at the casino. Compl. ¶ 11 (doc. 1). As a result of her fall, plaintiff asserts she sustained painful injuries to her shoulder, knee, and hip. *Id.* She further alleges the injuries required her to undergo extensive surgeries, including a hip replacement. *Id.*

Plaintiff submitted a claim to the casino's risk management department, which forwarded it to Travelers Insurance ("Travelers"), the casino's insurer. On January 27, 2014, Travelers denied plaintiff's claim on the grounds that "there is no evidence that a defect existed in or near the doorway to cause [plaintiff's] fall at the time the incident accord" and "there is no evidence to indicate negligence attributable to the Cow Creek Band of the Umpqua Tribe of Indians relative to this incident." Compl. Ex. 3 (doc. 1-5).

On March 27, 2014, plaintiff filed a Notice of Tort Claim, seeking an estimated $1.6 million in damages. Compl. Ex. 2 at 1 (doc. 1-4). Plaintiff served copies of the notice by certified mail to the Tribal Chairperson of the Cow Creek Band of Umpqua Indians, the General Counsel of the Cow Creek Band of Umpqua Indians, the Chief Executive Officer of the Umpqua Indian Development Corporation, the General Manager/Loss Prevention Division of Seven Feathers Hotel and Casino, and the Travelers adjuster. *Id.* at 2.

Page 2 – OPINION AND ORDER

The Tribe's Board of Directors thereafter approved the case for Tribal Court. Compl. ¶ 7. The case proceeded through discovery for two years, at which point the Tribe filed a motion for summary judgment, arguing for the first time that the Tribal Court lacked jurisdiction over plaintiff's claims because plaintiff's Notice of Tort Claim was deficient under the Tribal Tort Claims Code. *Id.* ¶ 8. Judge Yokim agreed and dismissed the case. Compl. Ex. 5 at 5 (doc. 1-7). Specifically, Judge Yokim found that plaintiff's claims against the Tribe could proceed only if she could demonstrate compliance with the Tribal Tort Claims Code, which effects a limited waiver of the Tribe's sovereign immunity only when a tort plaintiff complies with the Code's requirements. *Id.* at 4. Judge Yokim found that the Tribe's sovereign immunity remained intact because the proof of service filed by plaintiff's attorney demonstrated that the Secretary for the Board of Directors of the Tribe had not been served with notice of the claim within ninety days, in violation of Tribal Tort Claims Code 4-40(a). *Id.* at 3. Judge Yokim also considered and rejected plaintiff's argument that the Tribe had separately waived its sovereign immunity through a liability insurance provision of Tribal-State Compact for Regulation of Class III Gaming Between the Cow Creek Band of Umpqua Tribe of Indians and the State of Oregon ("Compact"). *Id.* at 4.

Plaintiff appealed the decision to the Tribal Court's Appellate Division, which consists of an Appeals Panel of the Tribe's Board of Directors. Compl. ¶ 8 & Ex. 6 (doc. 1-8). After full briefing, the Appellate Panel denied the appeal without explaining its reasoning. Compl. Ex. 6.

Plaintiff then filed suit in this Court. She asks this Court to: (1) reverse the Tribal Court's summary judgment order and remand for a trial on the merits; (2) issue a declaratory judgment finding that plaintiff has exhausted her tribal remedies and may now pursue her claims in state or federal court, at her election; and (3) enjoin defendants, including the Tribal Court and Judge

Yokim, from interfering with plaintiff's pursuit of her claims in state court. *Id.* at 22–23. The Court heard oral argument on defendants' motion on June 12, 2017.

## STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss an action if subject matter jurisdiction is lacking. A motion to dismiss under Rule 12(b)(1) may attack either the allegations of the complaint or the "existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). The party seeking to invoke the district court's jurisdiction bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Because subject matter jurisdiction "involves a court's power to hear a case, [it] can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). For example, a federal court must dismiss a case predicated on federal question jurisdiction if the well-pleaded complaint presents no claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A federal court also must dismiss a case if the plaintiff lacks standing to sue. *Warth v. Seldin*, 422 U.S. 490, 501–02 (1975).

Even though sovereign immunity may be waived and is thus "quasi-jurisdictional," a motion under Rule 12(b)(1) is the proper vehicle for seeking dismissal on the ground of sovereign immunity. *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). "Tribal sovereign immunity protects Indian tribes from suit absent express authorization from Congress or clear waiver by the tribe." *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725 (9th Cir. 2008). Sovereign immunity bars claims for injunctive and declaratory relief as well as claims for damages. *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir.

Page 4 – OPINION AND ORDER

1991). Plaintiff bears the burden of demonstrating a waiver of sovereign immunity. *Pistor*, 791 F.3d at 1111. Waiver cannot be implied; it must be "express" and "unequivocal." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). Unlike when hearing a motion to dismiss for failure to state a claim, a court considering whether sovereign immunity bars a suit need not assume that the facts alleged in the complaint are true. *Pistor*, 791 F.3d at 1111. Instead, the court may hear evidence and resolve factual disputes. *Id.*

## DISCUSSION

Defendants argue that this Court lacks federal question jurisdiction over this action and that plaintiff's claims are barred by sovereign immunity. Because these two arguments are intertwined and claim-specific, I analyze both arguments for each of the three potential sources of subject matter jurisdiction in the Complaint.

I.   *The Tribal Court's Interpretation of the Tribal Tort Claims Code*

Federal district courts have jurisdiction to hear "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Challenges to the extent of a tribe's jurisdiction often raise a federal question under section 1331. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 857 (1985); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1077 (9th Cir. 1990). For example, it is well-established that federal courts have authority to police the outer boundaries of a tribe's jurisdiction over nonmembers. *See, e.g., Strate v. A-1 Contractors*, 520 U.S. 438, 442 (1997) (considering the scope of "the adjudicatory authority of tribal courts of personal injury actions against defendants who are not tribal members"); *Big Horn Country Elec. Coop., Inc. v. Adams*, 219 F.3d 944, 947 (9th Cir. 2000) (analyzing whether a tribe could impose a tax on utility property owned by nonmembers but located on trust land); *Morongo Band of Mission Indians*, 893 F.2d at 1077 (deciding whether a tribe could require nonmembers to follow tribal rules about bingo games).

Page 5 – OPINION AND ORDER

As the Supreme Court explained in *National Farmers Union*, federal courts have subject matter jurisdiction to consider "whether a tribal court has exceeded its jurisdiction" when that question can be answered "by reference to federal law." 471 U.S. at 852–53. For example, Congress has "divested" tribal courts of jurisdiction to "try and to punish non-Indians for offenses committed on the reservation." *Id.* at 853 (citing *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 204 (1978)). That limitation on tribal courts' jurisdiction comes from a federal statute authorizing the United States to punish non-Indians for crimes committed on Indian land. *Id.* Any dispute about the extent of that limitation therefore presents a federal question. If proceedings are initiated against a non-Indian in tribal court, federal courts have the power to determine whether the tribal court's assertion of jurisdiction exceeds the limits set by Congress. Conversely, if a tribal court dismisses an action because it concludes a federal law deprives it of the power to hear a given case, a federal court has jurisdiction to review that determination.

But "jurisdiction" is not a magic word that automatically creates a federal question in the Indian law context. Rather, whether a dispute about the extent of a tribal court's jurisdiction raises a federal question depends on the source of the limitation on jurisdiction. Here, the Tribal Court dismissed based on a jurisdictional limitation imposed by *tribal law*. Specifically, Judge Yokim held that the Tribal Tort Claims Code sets limits for which claims can be adjudicated in tribal court and which must be dismissed on the grounds of sovereign immunity. Plaintiff now argues that Judge Yokim erred and that the Tribal Court *did* have jurisdiction. The parties' dispute about the limits of the Tribal Court's jurisdiction does not arise under federal law, but under tribal law. Because it is undisputed that the Tribal Court had jurisdiction to analyze whether plaintiff had complied with the Tribal Tort Claims Code's procedural requirements, this Court has no authority to revisit those findings. *See AT&T Corp. v. Coeur d'Alene Tribe*, 295

F.3d 899, 904 (9th Cir. 2002) ("[F]ederal courts may not readjudicate questions—whether of federal, state or tribal law— . . . absent a finding that the tribal court lacked jurisdiction or that its judgment be denied comity for some other valid reason.")

At oral argument, plaintiff framed the question somewhat differently, contending that whether the Tribal Court Claims Ordinance may be strictly applied against a non-native presents a federal question. "[A] tribe's claim for enforcement of its ordinance against [a] non-Indian" arises under federal law. *Morongo Band of Mission Indians*, 893 F.2d at 1077. Conversely, after she has exhausted tribal remedies, a non-Indian may sue in federal court to challenge a tribe's authority to require her to comply with tribal law. *Id.*

This case is unlike *Morongo* and similar cases because plaintiff does not broadly attack the Tribe's authority to require her to comply with a tribal law. For example, plaintiff does not challenge tribes' authority to require non-Indians injured on tribal land to litigate their tort claims in tribal court. Nor does she dispute that, as a general matter, tribes may require non-Indians to comply with procedural rules when they sue in tribal court. Her argument is narrower; she contends that the Tribal Court lacks authority to interpret the Tribal Tort Claims Code's notice requirements so strictly against a non-Indian, particularly when it is clear that all relevant parties had actual notice of the claim. Whether Congress has placed such a limit on tribal courts' authority is a federal question. But having identified a federal question does not get plaintiff far, because she has not cited any federal law as the source of this alleged limitation. As the Supreme Court explained in *Iowa Mutual Insurance Company v. LaPlante*, 480 U.S. 9, 18 (1987), "[t]ribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty." Absent a clear statement from Congress that it intends to limit tribal jurisdiction over non-Indians, "the proper inference from silence is that the sovereign power

remains intact." *Id.* (quoting *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 149 n.14 (1982)) (ellipses omitted). Thus, the Tribal Court did not exceed any federally-imposed limit on its jurisdiction when it strictly interpreted the tribal ordinance and dismissed plaintiff's claims.

Moreover, all plaintiff's arguments about the interpretation of the Tribal Tort Claims Code are barred by sovereign immunity. Although the Tribal Tort Claims Code contains an express, unequivocal waiver of sovereign immunity with respect to certain tort suits in Tribal Court, it does not waive immunity to suits in federal court seeking to interpret or enforce the terms of the Code.

II. *The Purported Conflict Between Tribal Law and the Compact*

Plaintiff also argues that the Complaint presents a federal question because she challenges the Tribal Tort Claims Code on the ground that it conflicts with the Compact.[1] Disputes about gaming compacts may raise federal questions because such compacts are "quite clearly . . . creation[s] of federal law." *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1056 (9th Cir. 1997). But here, any conflict between the Compact and tribal law cannot support federal question jurisdiction because plaintiff, who is neither a party to the Compact nor an intended third-party beneficiary of the Compact, lacks standing to enforce its terms.

"A party can enforce a third-party contract only if it reflects an express or implied intention of the parties to the contract to benefit the third party." *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003) (internal quotation marks omitted). Through the Compact, the Tribe waived its immunity "in courts of competent jurisdiction for the limited purpose of enforcing this Compact." Compact art. XII(E)(3)(b). Although that waiver is express and unequivocal, it does

---

[1] The Compact was attached as an exhibit to plaintiff's surreply and request for judicial notice. *See* Doc. 23-1. Because the Compact is a matter of public record, plaintiff's request for judicial notice of the Compact is granted. *See* Fed. R. Evid. 201.

Page 8 – OPINION AND ORDER

not help plaintiff because only the parties to the contract (the Tribe and the State of Oregon) and third-party beneficiaries "individually identified by name herein and expressly described as intended beneficiaries" have standing to enforce the Compact. *Id.* art. XIV(E). Plaintiff is not individually named in the Compact. Thus, plaintiff is barred from asserting any argument premised on breach of contract, including plaintiff's arguments that requiring strict compliance with the Tribal Tort Claims Code frustrates the purpose of the Compact and that she is excused from following the Code's procedural rules because the Compact did not notify her of those requirements.[2] *See Consentino v. Penchange Band of Luiseno Mission Indians*, 637 F. App'x 381, 382 (9th Cir. 2016).

Plaintiff separately argues that the Compact's provision on commercial liability insurance is an express, unequivocal waiver of sovereign immunity. That provision requires the Tribe's insurance policy to contain an endorsement "providing that the insurer may not invoke Tribal sovereign immunity up to the limits of the policy in state, federal, or Tribal court, including when the Tribe or an entity of the Tribe is a named defendant." *Id.* art. VIII(G). Plaintiff argues that by agreeing to this provision, the Tribe broadly waived its sovereign immunity for personal-injury suits related to its gaming operations up to its insurance policy limits. She also argues that the waiver overrides the procedural requirements of the Tribal Tort Claims Code because the Compact contains no reference to the Code.

---

[2] In support of this second argument, plaintiff asks this Court to take judicial notice of two tribal-state gaming compacts from California. Doc. 17-1. Because the compacts are matters of public record, plaintiff's request is granted. *See* Fed. R. Evid. 201. Plaintiff correctly notes that the judicially-noticed compacts, unlike the Compact at issue here, specifically reference the procedures with which a plaintiff must comply to file a tort claim. But plaintiff has not explained how that fact gives her standing to enforce the Compact or demonstrates an express, unequivocal waiver of sovereign immunity.

Page 9 – OPINION AND ORDER

The liability insurance provision falls short of the high bar to show waiver of sovereign immunity. By its terms, the provision governs only an *insurer's* assertion of sovereign immunity. The insurance company is not a party to this lawsuit. Moreover, the insurance company here denied coverage on the merits, not by invoking sovereign immunity. *See* Compl. Ex. 3 (doc. 1-5). Plaintiff essentially argues that including a provision like this in the Compact only makes sense if the Tribe has agreed to waive sovereign immunity for personal-injury suits. That inference is plausible, but it amounts to evidence of implicit waiver, which is insufficient to pierce sovereign immunity. *See Santa Clara Pueblo*, 436 U.S. at 58. Moreover, because the contract is silent regarding procedural requirements for bringing a tort claim, there is no "unequivocal" expansion of the Tribal Tort Claims Code's waiver of sovereign immunity to override the requirement to comply with the Tribal Tort Claims Code.

*Campo Band of Mission Indians v. Superior Court*, 39 Cal. Rptr. 3d 857 (Cal. Ct. App. 2006), does not change the analysis. First, the provision of the Compact at issue in *Campo* was materially different than the provision at issue here. Rather than limiting the defenses available to the Tribe's insurer, the compact at issue in *Campo* broadly provided that the Tribe did not "waive its immunity to suit *except to the extent of the policy limits and insurance coverage [provided for therein]*." *Id.* at 882 (emphasis and alteration in original).

Second, in *Campo*, the compact provided that tort claims would be addressed through arbitration. *Id.* at 879. The Tribe's Executive Committee denied the plaintiff's tort claim on procedural grounds, before reaching arbitration. The plaintiff filed suit in state court, seeking to compel arbitration, and the Tribe moved to dismiss on sovereign immunity grounds. *Id.* at 880. The state trial court found that, pursuant to a provision of the compact requiring the Tribe to provide "reasonable assurance that patron claims would be promptly and fairly adjudicated," the

Tribe had waived its sovereign immunity for the limited purposes of a suit to compel arbitration. *Id.* The court's order included a directive that the arbitrator must reach the merits of the plaintiff's claim rather than deny it on procedural grounds.

The California Court of Appeal affirmed the order compelling arbitration but vacated the trial court's command to reach the merits. *Id.* at 883. The court held that the Tribe retained the authority to choose the forum in which tort claims would be adjudicated, and that both the procedural and substantive aspects of the parties' arguments therefore should be adjudicated by the arbitrator rather than by the state court. *Id.*

Here, the Compact does not contain a provision analogous to the prompt and fair adjudication provision in *Campo*. Moreover, unlike in *Campo*, the disputes about plaintiff's compliance with procedural requirements and the purported conflict between the Compact and tribal law were fully adjudicated, not summarily dismissed. In other words, plaintiff has already received the remedy ordered by the *Campos* court: a hearing in the Tribe's chosen forum (here, Tribal Court) on whether she met the requirements necessary to proceed with her tort claim. Because plaintiff has not identified an unequivocal waiver of defendants' sovereign immunity with respect to her arguments regarding the Compact, those arguments are barred by sovereign immunity.

III. *Due Process*

Finally, plaintiff alleges that the notice of claim requirements of the Tribal Tort Claims Code violate due process because they are "inconsistent, unclear, and confusing." Compl. ¶ 31. Defendants correctly point out that plaintiff cannot assert a *constitutional* due process claim because the Tribe is neither the federal government nor a state. *Santa Clara Pueblo*, 436 U.S. at 55–56. The Indian Civil Rights Act ("ICRA"), a federal statute, imposes due process

requirements on federally-recognized tribes. 25 U.S.C. § 1302(a)(8). But any claim under ICRA is barred by sovereign immunity. *Santa Clara Pueblo*, 436 U.S. at 59. The ICRA narrowly waives tribes' immunity in federal court when violations of the ICRA are asserted through petitions for habeas corpus. *Id.* at 66; 25 U.S.C. § 1303. But because plaintiff is not in tribal custody, she cannot file such a petition.

## CONCLUSION

At bottom, plaintiff's complaint is about fairness. For years, plaintiff diligently prosecuted her claim in Tribal court. At oral argument, plaintiff's counsel stated that he exchanged emails, letters, and discovery with defendants' lawyers, including visiting the site of the accident with the Tribe's attorney, the Tribe's expert, and the casino's risk manager. At no point did defendants or their lawyers indicate to him that notice was deficient. Plaintiff received numerous confirmations that her suit was progressing, including a signed acknowledgement from the Tribe's Board of Directors. Then, after two years, the Tribe for the first time argued that plaintiff's suit could not proceed, based on her failure to serve notice of a tort claim on the secretary of that same Board of Directors. Plaintiff now finds herself barred from court based on what appears to be a minor, technical violation of the law.

But this Court has no freestanding authority to decide whether plaintiff has been fairly treated by a sovereign entity. Federal courts are courts of limited jurisdiction which "possess only that power authorized by Constitution and statute." *Kokkonen*, 511 U.S. at 377. Moreover, courts cannot ignore principles of sovereign immunity simply because dismissing a suit may have "harsh" consequences. *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1098–99 (9th Cir. 2015). Federal courts have no power to "simply . . . waive sovereign immunity where Congress [or the Tribe] has not." *Id.* at 1099 (citing *United States v. Park Place*

*Assocs., Ltd.*, 563 F.3d 907, 935 (9th Cir. 2009)). The Complaint must be dismissed because it fails to present a federal question as to which the Tribe has unequivocally waived its sovereign immunity in federal court.

Defendants' motion (doc. 15) is GRANTED and this action is DISMISSED.[3] Dismissal is with prejudice because no amendment to the Complaint could cure its jurisdictional deficiencies.

IT IS SO ORDERED.

Dated this 29 day of June 2017.

                                      Ann Aiken
                             United States District Judge

---

[3] Because the Court lacks subject matter jurisdiction over this action, it is not necessary to address defendants' arguments under Rules 12(b)(5) and 12(b)(6).